# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Martin Taradejna,<br>Individually and on behalf of all others<br>similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>General Mills, Inc., a<br>Delaware corporation,<br>Yoplait USA, Inc., a Delaware<br>Corporation,<br><br>    Defendants. | Civil No. 12-993 (SRN/LIB)<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Brian C. Gudmundson and David M. Cialkowski, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 North Kierland Boulevard, Suite 145, Scottsdale, Arizona, and Christopher P. Ridout, Ridout & Lyon, LLP, 555 East Ocean Boulevard, Suite 500, Long Beach, California 90802, for Plaintiff.

Aaron D. Van Oort, Erin M. Verneris, Sarah L. Brew, and Steven B. Toeniskoetter, Faegre Baker Daniels, LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, William F. Stute, DLA Piper, LLP, 2800 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

  This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 9], and Plaintiff's Motion to Appoint Interim Class Counsel [Doc. No. 16]. For the reasons stated below, Defendants' Motion is granted in part, and denied as moot in part, and Plaintiff's Motion is denied without prejudice.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Martin Taradejna brings this putative class action alleging violations under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota Uniform Deceptive Trade Practices Act, related to the alleged mislabeling of "Yoplait Greek" products marketed by Defendants General Mills and Yoplait. (Compl. ¶¶ 2-3 [Doc. No. 1-1].) As another court has noted, "[u]nlike other types of yogurt sold in this country, Greek yogurt is strained to remove the whey, resulting in a creamier product, richer in protein and lower in lactose." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 09-CV-488-JL, 2009 WL 3255218, *2 (D. N.H. Oct. 7, 2009).

As Plaintiff alleges, prior to 2007, Greek yogurt was not sold and distributed in large quantities in the United States. (Compl. ¶ 65 [Doc. No. 1-1].) Since that time, however, the production and distribution of Greek yogurt in this country has increased dramatically and is now one of the fast-growing segments of the yogurt market. (Id. ¶¶ 65-66.) Plaintiff contends that Defendants were unprepared for the popularity of Greek yogurt and possessed no facilities at which they could manufacture Greek yogurt using the straining process. (Id. ¶¶ 27-28.) Instead of constructing new facilities to manufacture strained Greek yogurt, Taradejna alleges that Defendants chose to use Milk Protein Concentrate ("MPC") when they entered the Greek yogurt market in 2010. A blend of dry dairy products, MPC is sold in a powdered form. (Id. ¶ 31.) It is a form of ultrafiltered milk that typically "retain[s] all protein components of milk." 70 Fed. Reg.

2

60751, 60752 (Oct. 19, 2005) (describing the ultrafiltration process in milk, as compared to mico- and nanofiltration processes). Defendants' use of MPC in the manufacture of its Yoplait Greek yogurt results in a product with the thickness and protein content typical of Greek yogurt. (Compl. ¶ 28 [Doc. No. 1-1].) The labeling of Defendant's Yoplait Greek yogurt discloses MPC as an ingredient. (¶ 67.) Taradejna contends, however, that "Yoplait Greek yogurt is neither yogurt nor Greek, as those terms are used in the industry and as defined by regulation." (Id. ¶ 3.) Rather, Taradejna alleges that Yoplait Greek yogurt fails to comply "with legal and regulatory rules governing the labeling of food because it contains significant amounts of [MPC]." (Id.)

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*., the Food & Drug Administration ("FDA") is authorized to create reasonable definitions and "standards of identity" for certain foods. 21 U.S.C. § 341. In 1981, the FDA promulgated such standards of identity for yogurt, 21 C.F.R. § 131.200, lowfat yogurt, 21 C.F.R. § 131.203, and nonfat yogurt, 21 C.F.R. § 131.206.[1] The standard of identity defines yogurt as "the food produced by culturing one or more of the optional dairy ingredients specified in [§ 131.200(c)] with a characterizing bacterial culture that contains the lactic acid-producing bacteria, Lactobacillus bulgaricus and Streptococcus thermophilus." 21 C.F.R. § 131.200(a). The standard of identity further describes the ingredients and the process for manufacture of yogurt. Permitted optional dairy

---

[1] As Plaintiff alleges, these standards are materially identical. (Compl. ¶ 49 [Doc. No. 1-1].) In the interest of clarity, the Court hereinafter exclusively cites the representative "yogurt" regulation, § 131.200, setting forth the standard of identity.

ingredients that may be cultured to produce yogurt include "cream, milk, partially skimmed milk or skim milk, used alone or in combination." 21 C.F.R. § 131.200(c). In addition, the standard of identity provides for methods of analysis of yogurt, sets forth standard nomenclature for the product, and provides uniform requirements for the disclosure of the ingredients used to manufacture yogurt. 21 C.F.R. § 131.200(e)-(g).

When the FDA issued the standard of identity for yogurt in 1981, it also proposed to limit "other optional ingredients" that could be included in yogurt. See 47 Fed. Reg. 41519 (Sept. 21, 1982). The Agency therefore drafted a provision limiting the use of "other optional ingredients" in yogurt to certain milk-derived ingredients (e.g., concentrated skim milk, nonfat dry milk, buttermilk, whey), sweeteners, flavorings, color additives, and stabilizers. 21 C.F.R. § 131.200(d)(1)-(5). Noteworthy here, the list of "other optional ingredients" does not include MPC. Id. In response to comments and objections, however, the language regarding "other optional ingredients," 21 C.F.R. § 131.200(d)(1), was stayed, and the limitation, while published, was not put into effect. (Compl. ¶ 54 [Doc. No. 1-1].) Plaintiff alleges that "it is as if that limited section of the standard of identity (i.e., section 131.200(d)(1)) does not exist." (Id.) Thus, Plaintiff alleges that because MPC is not an ingredient expressly listed or described within the applicable standards of identity for yogurt, use of this ingredient is not permitted in yogurt. (Id. ¶ 60.)

Defendants, however, contend that the FDA's position is that yogurt may contain

MPC. (Defs.' Mem. Supp. Mot. Dismiss at 15 [Doc. No. 13].)[2]  In support of their argument, Defendants point to the following publically-available response to questions raised with the FDA at a 2004 milk seminar:

> May whey protein concentrate (WPC) and/or milk protein concentrate (MPC) be used as ingredients in yogurt to increase the nonfat solids content?
>
> *Yes.  21 C.F.R. 131.200(d), which would have precluded WPC or MPC use, was one of several provisions of the standard of identity for yogurt that were stayed in 1982, 47 FR 41510, September 21, 1982.*

M-I-04-10: Questions and Answers from a FY'04 Regional Milk Seminar, an Advanced Milk Processing Course, Dec. 27, 2004 (emphasis in original).[3]

In 2009, the FDA issued a Proposed Rule which would allow for certain modifications to the standards of identity for yogurt, including "the use of reconstituted milk and whey protein concentrate as standard dairy ingredients." (Compl. ¶ 60 [Doc. No. 1-1]; 74 Fed. Reg. 2443 (Jan. 15, 2009) (2009 Proposed Rule)).  The FDA noted that while the published standards do not permit the use of certain ingredients such as preservatives or a reconstituted dairy ingredient as a basic ingredient, "because of the stayed provisions, FDA has not taken enforcement action against the use of these ingredients in yogurt. . . ."  74 Fed. Reg. at 2444.  The FDA explained that, as of 2009, it

---

[2] Citations to page numbers in the parties' memoranda are to the docketed page numbers found at the top header on each page.

[3] Found at the FDA's website: http://www.fda.gov/Food/FoodSafety/Product-SpecificInformation/MilkSafety/CodedMemoranda/MemorandaofInformation/ucm077366.htm.

5

had not held a public hearing to resolve these issues "due to competing priorities and limited resources." Id. at 2444. Therefore, the FDA stated that yogurt may "deviate from the relevant standards" as to the stayed provisions, which would include "milk-derived ingredients that may be used to increase the nonfat solids content" of yogurt. Id.

As background to the 2009 Proposed Rule, the FDA further described how the 1982 stay came about:

> f. Use of safe and suitable milk-derived ingredients as optional dairy ingredients. Stayed portions of the standards of identity for yogurt, lowfat yogurt, and nonfat yogurt listed the optional milk-derived ingredients (i.e., concentrated skim milk, nonfat dry milk, buttermilk, whey, lactose, lactalbumins, lactoglobulins, and whey modified by partial or complete removal of lactose and/or minerals) that can be used for the purpose of increasing the nonfat solids content of these foods above the minimum required 8.25 percent, provided the ratio of protein to total nonfat solids of the food and the protein efficiency ratio of all protein present is not decreased as a result of adding these optional ingredients (§§ 131.200(c)(1), 131.203(c)(1), and 131.206(c)(1); redesignated as §§ 131.200(d)(1), 131.203(d)(1), and 131.206(d)(1)). FDA stayed these provisions in response to objections to the January 30, 1981, final rule that these provisions preclude the use of other safe, nutritional, and functional milk-derived ingredients and that there appears to be no rational factual basis for the omission of traditional ingredients such as partially delactosed skim milk, partially hydrolyzed whey, and other safe and suitable ingredients (47 FR 41519).

Id. at 2450.

In the 2009 Proposed Rule, the FDA also noted the current use and apparent safety of milk-derived ingredients in the manufacture of yogurt, stating

> [The National Yogurt Association] stated that manufacturers currently use a variety of safe and suitable milk-derived ingredients for the purpose of increasing the nonfat solids content of yogurts. FDA is not aware of any data or other information that would suggest that expanding the current list of optional milk-derived ingredients to permit the use of any safe and

6

> suitable milk-derived ingredient, under the conditions stated in the current standard to maintain the nutritional quality of yogurt, would have an adverse effect on the overall quality or safety of yogurt.

Id. The Agency concluded that ". . . it is appropriate to incorporate technological flexibility into standards so long as the basic nature and essential characteristics of the food are not adversely affected." Id. 2450-51. Therefore, the FDA proposed to permit

> the optional use of any safe and suitable milk-derived ingredient as an optional dairy ingredient in the manufacture of yogurt to increase the nonfat solids content of the food above the minimum required 8.25 percent, provided the ratio of protein to total nonfat solids of the food and the protein efficiency ratio of protein present in the food are not decreased as a result of the use of such ingredients. Specifically, FDA is proposing, in new § 131.200(c), "Optional dairy ingredients," to permit other safe and suitable milk-derived ingredients to be used to increase the nonfat solids content of the food, provided the ratio of protein to total nonfat solids of the food and the protein efficiency ratio of protein present in the food are not decreased as a result of the use of such ingredients. FDA seeks comment on the need for and appropriateness of this proposed provision.

Id. at 2450-51. It appears that no public hearing has yet been held on the 2009 Proposed Rule.

Plaintiff, an Illinois resident, filed the Complaint in the instant case on March 30, 2012, in Minnesota State Court. (Compl. [Doc. No. 1-1].) On April 20, 2012, Defendants removed the matter to this Court. (Notice of Removal [Doc. No. 1].) In the Complaint, Taradejna alleges that in March 2012, he "purchased a serving of Yoplait Greek yogurt, which brandished the label developed and approved by Defendants" at a Chicago grocery store. (Compl. ¶ 78 [Doc. No. 1-1].) Taradejna, who paid $1.89 for the product, alleges that this was a "premium price for Greek yogurt, which exceeded the price of regular non-Greek yogurt such as original Yoplait." (Id.) He alleges that while

MPC was listed as an ingredient on the label, the label was "inadequate to disclose the fact that what Plaintiff was going to purchase and ultimately eat, was not actually 'yogurt,' as marked." (Id. ¶ 79.) Consequently, Taradejna alleges that Defendants' actions in marketing this product violate several of Minnesota's consumer protection statutes. (Id. ¶¶ 105-127.)

## II. DISCUSSION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants seek dismissal of Plaintiff's Complaint. Defendants contend that Taradejna's claims fail as a matter of law for the following reasons: (1) Plaintiff's claims are based on a mistaken premise and should be dismissed because the federal standard of identity for yogurt allows it to contain MPC; (2) Plaintiff's claims are preempted, to the extent that he attempts to use Minnesota law to create new requirements for yogurt; (3) primary jurisdiction bars Plaintiff's claims; and (4) Plaintiff's claims fail on the merits. (Defs.' Mem. in Supp. Mot. Dismiss at 10-11 [Doc. No. 13].)

Arguing that his claims are adequately pled, Taradejna responds, arguing that: (1) Yoplait Greek yogurt is misbranded, as it fails to comply with the standard of identity; (2) any informal statement by FDA personnel which conflicts with yogurt's standard of identity is not entitled to deference; (3) Plaintiff's claims are not preempted by federal law; (4) the FDA should not have primary jurisdiction over Plaintiff's claims; (5) the Court should reject any argument that Illinois law applies, and Plaintiff has properly pled a violation of Minnesota's consumer protection statutes; and (6) Plaintiff had adequately

alleged deceptive conduct and injury. (Pl.'s Opp'n Mem. at 8-9 [Doc. No. 23].)

A.  **Standard of Review**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.[4] Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

---

[4] When considering a Rule 12 motion, the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), as well as materials that are "necessarily embraced by the pleadings." Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997). See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 199 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). Here, in addition to the Complaint and Exhibits to the Complaint, the Court is not precluded from taking notice of items in the public record, such as regulations, proposed regulations, and the public positions of the FDA. Nixon, 164 F.3d at 1107 (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Hollis v. United States Dep't of Army, 856 F.2d 1541, 1543-44 (D.C. Cir. 1988)). The parties do not appear to dispute the factual allegations or factual record; the parties instead disagree with respect to the legal significance of the facts. Id.

level." Id. at 555. As the United States Supreme Court recently stated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

### B. Primary Jurisdiction

"Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." Access Telecomms. v. Southwestern Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998). Although there is no fixed formula for deciding whether to apply the doctrine, id., the doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005) (internal quotation and citation omitted). Agency expertise is the most common reason that courts apply the doctrine of primary jurisdiction. Access Telecomms., 137 F.3d at 608. In addition, courts apply the doctrine to promote uniformity and consistency within the particular field of regulation. Id. However, courts "should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine inappropriate." United States v.

McDonnell Douglas Corp., 751 F.2d 220, 224 (8th Cir. 1984). When the primary jurisdiction doctrine applies, the "district court has discretion either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." Access Telecomms., 609 (internal quotation and citation omitted, alteration in original).

Defendants argue that this Court may rule on their Motion to Dismiss and need not defer to the Agency's authority, however, they acknowledge that referring the matter to the FDA is an appropriate alternative course of action. (Defs.' Mem. Supp. Mot. Dismiss at 26 [Doc. No. 13].) Although Defendants' primary arguments in support of dismissal are generally persuasive, the Court finds that the reasons for applying the primary jurisdiction doctrine are present in this case. The underlying issue here is whether MPC is a proper, permitted ingredient in yogurt. The resolution of this question falls squarely within the competence and expertise of the FDA, pursuant to the authority granted to the Agency by Congress. See 21 U.S.C. §§ 301, *et* seq. As Defendants note, issues of food labeling are sufficiently complex that they "are best left to FDA for consideration prior to judicial review." (Defs.' Mem. Supp. Mot. Dismiss at 27 [Doc. No. 13] (citing Lever Bros. Co. v. Mauer, 712 F. Supp. 645, 651 (S.D. Ohio 1989); Heller v. Coca-Cola Co., 230 A.D.2d 768, 769-70 (N.Y. App. Div. 1996).) The current standard of identity for yogurt, the stayed 1982 limitations, the Agency's subsequent public statements about the standard, and the 2009 Proposed Rule do not constitute a model of clarity. The FDA is in the best position to resolve any ambiguity about the standard of identity for yogurt – a

matter requiring scientific and nutritional expertise. Moreover, given that the FDA has issued its 2009 Proposed Rule on the standard of identity for yogurt, it would be imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's while revision of the standard of identity is pending.

Moreover, the FDA's ultimate decision on the permitted ingredients in yogurt will ensure national uniformity in labeling, utilizing the Agency's special expertise in this regard. The Agency's unique role in ensuring such consistency and uniformity is particularly significant here, as several recently-filed yogurt lawsuits throughout the country involve the same or similar issues as found in the instant suit.[5] The increasing volume of this litigation creates the potential for inconsistent judicial rulings. This underscores the importance of promoting uniformity by referral of this matter to the FDA. While the Court is very mindful of added expense and delay that may result from a primary jurisdiction referral, the need for scientific and technical expertise and uniformity and consistency within this field outweighs these other considerations.

---

[5] See Conroy v. Dannon Co., No. 12-CV-6901 (VLB) (S.D.N.Y.) (filed Sept. 11, 2012) (motion to dismiss filed); Bailey v. Dannon, Inc., 8:12-CV-1438 (PA) (C.D. Cal.) (filed Aug. 31, 2012) (notice of voluntary dismissal filed); Long v. Cabot Creamery Cooperative, Inc., No. 12-CV-61496 (WJZ) (S.D. Fla.) (filed July 30, 2012) (dismissed without prejudice pursuant to notice of voluntary dismissal); Hawkins v. General Mills, Inc., No. 2:12-cv-3306 (DDP/DTB) (C.D. Cal.) (filed Apr. 16, 2012) (continuance granted, permitting plaintiffs to amend complaint and defendants to answer same, pending the ruling in the instant case, Taradejna v. General Mills, Inc.); Smith v. Cabot Creamery Cooperative, Inc., No. 3:12-CV-4591 (SC) (N.D. Cal.) (filed Aug. 31, 2012) (motion to dismiss filed, hearing to be held February 8, 2013); Gallant v. General Mills, Inc., No. 2:12-CV-4121 (DDP/DTB) (C.D. Cal.) (filed May 11, 2012) (continuance granted, permitting plaintiffs to amend complaint and defendants to answer same, pending the ruling in the instant case, Taradejna v. General Mills, Inc.).

Finding that the primary jurisdiction doctrine is applicable here, the Court grants Defendants' motion in part, dismisses this case without prejudice, and directs the parties to initiate the proper proceedings with the FDA. In light of this ruling, the Court does not address Defendants' other arguments in support of dismissal under Rule 12(b)(6), and therefore denies them as moot. Plaintiff's Motion to Appoint Interim Class Counsel is denied without prejudice.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss [Doc. No. 9] is **GRANTED in part**, and **DENIED as moot**, in part;

2. The parties are directed to initiate the proper proceedings with the FDA;

3. Plaintiff's Motion to Appoint Interim Class Counsel [Doc. No. 16] is **DENIED without prejudice**; and

4. The Complaint [Doc. No. 1-1] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  December 10, 2012              s/Susan Richard Nelson
                                       SUSAN RICHARD NELSON
                                       United States District Judge